IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01001-ZLW-KMT

JOHN NASIOUS,

      Plaintiffs,

v.

LITTLETON POLICE DEPARTMENT,
HAL MANDLER, Littleton Police Department,
DENVER POLICE DEPARTMENT,
BART MALPASS, #93026, Denver Police Department,
OFFICER CRAIG, Denver Police Department,
OFFICER RIEDMULLER, Denver Police Department,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on "Littleton and Hal Mandler's Motion for Summary Judgment" (Doc. No. 72, filed on April 10, 2008), and the "Motion for Summary Judgment by Defendants Denver Police Department, Officer Bart Malpass, Officer Jennifer Craig and Officer Erik Riedmuller" (Doc. No. 84, filed on August 15, 2008).

### FACTUAL BACKGROUND

      The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation. The claims in this case arise from two separate arrests of *pro se* Plaintiff, John Nasious ("Plaintiff"). Plaintiff was arrested on forgery charges by

Defendant Denver Police Officers Jennifer Craig ("Defendant Craig") and Erik Riedmuller ("Defendant Riedmuller") on June 6, 2005 ("Denver arrest"). Cash in the amount of $1,068.23 was taken from the Plaintiff incident to his arrest. (Denver Defs. Mot. for Summ. J at 2 [hereinafter "Denver Mot. for Summ. J."] [filed August 15, 2008].) Defendant ultimately pled guilty to one count of Forgery-Check/Commercial Instrument, a violation of C.R.S. § 18-5-102 (1)(c) in connection with this arrest. (*Id.*) On November 10, 2005, the Colorado District Court sentenced him to four years incarceration to be served in a Community Corrections facility. (*Id.*) Plaintiff also names Denver Police Detective Bart Malpass ("Defendant Malpass") who apparently had contact with the Plaintiff concerning the whereabouts of the items seized at the time of Plaintiff's second arrest, discussed below. (Compl. at 4, ¶ 17.)

The Plaintiff was arrested again on June 16, 2006 ("Littleton arrest"), while under the sentence imposed in the Denver case, by Littleton Police Officer Hal Mandler ("Defendant Mandler"). (Exhibit A-1, Littleton Defs. Mot. for Summ. J [hereinafter "Mandler Affidavit"], ¶ 8.) Defendant Mandler was responding to a report of suspicious activity related to a stolen car in a parking lot. (*Id.* at ¶ 8.) Upon contact with the Plaintiff, Defendant Mandler learned that Plaintiff was subject to two outstanding felony arrest warrants. (*Id.* at ¶ 5.) One of the warrants was based on Plaintiff's non-compliance with the terms of the Community Corrections sentence in his Denver case. ("Denver Mot. for Summ. J. at 4 ¶ 5-6.) Plaintiff was arrested and taken into custody based on the outstanding warrants and on his connection with the stolen vehicle.

(Mandler Affidavit, ¶ 5, 8.)  Cash in the amount of $2,435.00 was found on the Plaintiff's person, and seized as potential evidence of a crime. (*Id*. at  ¶ 8.)

Defendants Malpass, Craig, and Riedmuller are Denver Police Department Officers. Defendant Mandler is a Littleton Police Department Officer.  Plaintiff has sued the defendant officers in their individual and official capacities pursuant to 28 U.S.C. § 1343 and 42 U.S.C. §1983.  (Amd. Compl. at 3, [hereinafter "Compl."] [filed October 1, 2007].)

Plaintiff primarily claims that all the defendants violated his Due Process rights under the Fifth and Fourteenth Amendments by retaining his property, seized from him at the time of his two arrests, without providing due process. ( *Id*.)  Further, Plaintiff claims that Defendant Mandler violated his Fourteenth Amendment constitutional rights by the act of seizing the $1,068.23[1] which was on his person at his June 6, 2005 arrest in Littleton and for failing to inform Plaintiff of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966) when he was arrested on June 16, 2006.  He also claims that the Littleton Defendants illegally seized and retained $2,435.00 from him. ( *Id*.)

---

[1] Plaintiff alleges $2,500 was taken from him after his Denver arrest, and he claims that $2800 was taken from him after his Littleton arrest. (Compl. at 3; 5.)  The actual cash amount is not a material fact in controversy, however Plaintiff is in error about the amounts taken in both seizures.  *See* Aff. of Jennifer Craig [hereinafter "Craig Affidavit"] attached to Denver Defs. Mot. for Summ. J, Doc. 84-2, Property Receipt; Exhibit A-1, Littleton Defs. Mot. for Summ. J [hereinafter "Mandler Affidavit"], ¶ 8; Exhibit A-2, Littleton Defs. Mot. for Summ. J [hereinafter "Adams Affidavit"], ¶ 4; Exhibit A-3, Littleton Defs. Mot. for Summ. J ["McAlister Affidavit"], ¶ 4.  For the purposes of this Recommendation, the cash amount in the Denver case will be $1,068.23, and the cash amount in the Littleton case will be $2,435.00.

In their motions for summary judgment, Defendants Denver Police Department, Malpass, Craig, and Riedmuller, as well as the Littleton Police Department and Defendant Mandler argue the Complaint should be dismissed because: (1) the police departments are not proper party defendants; (2) the individual police officers are entitled to qualified immunity in their individual capacities; and (3) Plaintiff cannot establish municipal liability on the part of the individual police officer defendants in their official capacities. (Denver Mot. for Summ. J. at 6, 8; (Littleton Defs. Mot. for Summ. J at 8 [hereinafter "Littleton Mot. for Summ. J."] [filed April 10, 2008].)

## PROCEDURAL HISTORY

Plaintiff's Third Amended Complaint was filed on October 1, 2007. (Compl.) The Littleton Defendants filed their motion for summary judgment on April 10, 2008. Defendants Denver Police Department, Malpass, Craig, and Riedmuller filed their motion for summary judgment on August 15, 2008. (Denver Mot. for Summ. J.) No response has been filed to either of the summary judgment motions.

These motions are ripe for review and recommendation.

## STANDARD OF REVIEW

*1.* **Pro Se** *Plaintiff*

Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## 2.      *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated the "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

## 3. *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ.

P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under

the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th

Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence

when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*,

756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom

are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of

Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### I.        Claims Against the Police Departments

Both the Littleton and Denver Police Departments argue that Plaintiff's claims against

the Police Departments fail because a city's police department is not a proper party defendant in

a civil rights case. (Littleton Mot. for Summ. J at 1; Denver Mot. for Summ. J at 8-10.) The

Denver Police Department is a department of the City and County of Denver created by the

City's Charter. *See* Denver Charter Art. A9.1. The parties did not advise the court exactly what

legislative vehicle created the Littleton Police Department, however Plaintiff does not contest the

allegation in Defendant Littleton's Motion for Summary Judgment that the Littleton Police

Department is not an entity separate from the City itself. *But see Green v. Post*, *2008 WL

707338* (D. Colo. 2008) (City should submit factual material to support that police department is

not an entity separate from the City itself.)

A police department is merely a vehicle through which a city government fulfills its policing functions, and thus is not a proper defendant in a civil lawsuit. *Martinez v. Winner*, 771 F. 2d 424 (10th Cir. 1985); *Boren v. Colorado Springs*, 624 F. Supp. 474, 479 (D. Colo. 1985); *Renalde v. City and County of Denver, Colo.* 807 F.Supp. 668, 675 (D.Colo.,1992). As such, the claims against the Littleton Police Department and Denver Police Department should be dismissed.

## II. Individual Capacity Claims Against the Police Officers

When a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are "treated as the transactions of two different legal personages." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 n. 6 (1986) (internal quotation marks omitted). Personal or individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," while an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159 (1985) (internal quotation marks omitted). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and not as a suit against the official personally, "for the real party in interest is the entity." *Id.* at 166 (emphasis added); *Johnson v. Board of County Com'rs for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996).

### A.    Qualified Immunity

#### 1.    Two Part Test in Determining Eligibility

The doctrine of qualified immunity shields a government official's performance of discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining eligibility for qualified immunity on claims against a defendant in his individual capacity involves answering two questions: (1) whether a plaintiff has asserted that the defendant violated a constitutional or statutory right, and if he has, (2) "whether the right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Keylon v. City of Albuquerque*, 535 F. 3d 1210, 1218 (10th Cir. 2008) (internal citations and quotations omitted). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ---S.Ct.---, 2009 WL 128768, at *9.

#### 2.    Personal Participation

Personal capacity suits pursuant to §1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985). Personal participation is an essential allegation in a §1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–1263 (10th Cir. 1976). To establish personal liability, a plaintiff must show first that the official caused a deprivation of a

constitutional right. *Graham*, 473 U.S. at 166. Second, a plaintiff must both allege in the

complaint and prove at trial an affirmative link between the alleged constitutional violation and a

defendant's personal activities. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d

1144, 1157 (10th Cir. 2001) (for §1983 claims, affirmative link between the defendant's conduct

and any constitutional violation "must be alleged in the complaint as well as proven at trial"). It

is beyond dispute that "for liability to arise under §1983, a defendant's direct personal

responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo

v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.

1993) (affirming district court's dismissal, in part, where "plaintiff failed to allege personal

participation of the defendants"); *accord Clayton v. Ward*, 232 F. App'x 827, 830 (10th Cir.

2007); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable

in a §1983 action unless he "participated or acquiesced" in an alleged constitutional violation).

### B.  Alleged Constitutional Violations

#### 1.  Fifth Amendment Claim Against Defendant Mandler for Failure to Provide *Miranda* Warning

Plaintiff argues that Defendant Mandler's failure to inform Plaintiff of his *Miranda* rights

after the June 16, 2006 arrest violated his constitutional rights. A suspect in custody has a

constitutional right under the Fifth Amendment to remain silent. *Miranda v. Arizona*, 384 U.S.

436 (1966). *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case

to be a witness against himself. . . ."). *Miranda* requires a warning of the availability of certain

constitutional rights to an individual in police custody at the onset of the interrogation process.

*Miranda v. Arizona*, 384 U.S. 436 (1966).  However, *Miranda* does not require such a warning with respect to "[G]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact finding process. . ." *Id*. at 477; *United States v. Weller*, 652 F. 2d 964, 966 (10th Cir. 1981).  Further, "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda*, 384 U.S. at 478.  Interrogation as conceptualized in the *Miranda* opinion must reflect a measure of compulsion above and beyond that inherent in custody itself.  *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980).

In deciding whether *Miranda* warnings are necessary in any given situation the Court must examine, first, whether the individual was in custody, and second, whether responses elicited from the defendant were the result of police interrogation.  Both prerequisites must be satisfied before *Miranda* warnings are necessary.

In this case, the Plaintiff does not allege that he was interrogated and Defendant Manlder affirmatively states he did not interrogate Plaintiff. (Mandler Affidavit ¶ 7.)  Since no warnings pursuant to *Miranda* were required, there was no constitutional violation in Defendant Mandler choosing not to so advise Plaintiff upon his arrest on the outstanding Denver warrant.  (*Id*.)  Therefore, this court finds that Defendant Mandler in his individual capacity is entitled to qualified immunity on this claim.

### 2. Fourth Amendment Claim Against Defendant Mandler for Unlawful Search

Plaintiff claims a Fourth Amendment violation occurred when he was subjected to an unlawful search on June 16, 2006. (Compl. at 4.) The underlying premise of the Fourth Amendment is that warrantless searches and seizures are *per se* unreasonable except for a few narrowly defined exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971). A plaintiff may have a cognizable constitutional claim for a defendant police officer's actions if those actions do not fall within one of the warrant requirement exceptions. *Id.*

Under the search incident to arrest exception, a police officer, incident to an arrest, may search a person "and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." *Chimel v. California*, 395 U.S. 753, 768 (1969); *United States v. Edwards*, 415 U.S. 800, 802 (1974); *Illinois v. Rodriguez*, 497 U.S. 177 (1990). In this case, the money seized from the Plaintiff was found on his person. Therefore the only issue is whether the search was incident to arrest. To determine whether a search is incident to an arrest, the court focuses on (1) whether "a legitimate basis for the arrest existed before the search," and (2) whether "the arrest followed shortly after the search." *Id.*

In this case, as noted *supra*, Plaintiff did not file a response to Defendant Mandler's motion. The Plaintiff's Complaint does not set forth facts different from those in the Mandler Affidavit regarding the events of June 16, 2006. Therefore, these events will be considered as undisputed facts.

On June 16, 2006, after Defendant Mandler contacted the Plaintiff and determined his correct name, he learned that the Plaintiff had two outstanding felony warrants for his arrest for theft. (Mandler Affidavit at ¶ 6.) On that basis, Plaintiff was arrested and taken into custody. (*Id*. at ¶ 5-6.) The search of the Plaintiff was conducted immediately upon his arrest. (*Id.*) Cash in the amount of $2,435.00 was found on the Plaintiff, and seized as potential evidence of a crime. (*Id.*) The search is therefore valid under the search incident to arrest exception to the warrant requirement and Defendant Mandler's conduct did not result in a violation of Plaintiff's Fourth Amendment rights. Therefore this court finds that Defendant Mandler in his individual capacity is entitled to qualified immunity on this claim.

### 3.    Failure to State a Fifth Amendment or Fourteenth Amendment Claim Against Defendant Malpass

A party's right to due process may be violated if the government deprives that person of life, liberty, or property. *See* U.S. Const. amend. V. The Fourteenth Amendment prohibits any state deprivation of life, liberty, or property without due process of law. Due process is defined as, "[t]he conduct of legal proceedings according to established rules and principles for the protection and enforcement of private rights, including notice and the right to a fair hearing before a tribunal with the power to decide the case."[2]

---

[2] Black's Law Dictionary 868 (8th ed. 2004).

In this case, the Plaintiff fails to demonstrate that Defendant Malpass personally participated in any conduct which violated Plaintiff's constitutional rights. First, in connection with the money seized during the Littleton arrest, Plaintiff alleges that "Bart Malpass of the Denver Police Department never showed any record of this money taken from Mr. Nasious." (Compl. at 4, ¶ 17.) Plaintiff also claims that Defendant Malpass said, "The property room at the Denver County Police Dept. never showed any record on file from the Littleton Police Dept. of this money." (*Id*. at 4, ¶ 18.)

The undisputed facts as found in the Mandler Affidavit, the Adams Affidavit (Doc. No. 73-3), and the McAlister Affidavit (Doc. No.73-4) are that the funds seized from the Plaintiff during the Littleton arrest remained, at all times, in the custody and control of the Littleton Police Department and were never transferred to the Denver Police Department. (Littleton Mot. for Summ. J., A-1, A-2, A-3.) Accepting as true Plaintiff's allegation that Defendant Malpass said that there was no record of his money on file at the Denver Police Department, Plaintiff fails to state a claim upon which relief can be granted as to Defendant Malpass since all Defendant Malpass is alleged to have done is tell Plaintiff the truth. This is the full extent of Defendant Malpass' alleged direct personal participation. Therefore, Plaintiff has failed to state a cognizable claim against Defendant Malpass and there was no constitutional violation. Defendant Malpass is entitled to qualified immunity on all claims against him in his individual capacity.

### 4. Failure to State a Fourth Amendment Claim Against Defendants Craig and Riedmuller

It is undisputed that Plaintiff was arrested by Defendants Craig and Riedmuller on June 6, 2005, when they responded to a forgery call at Key Bank on South Colorado Boulevard in Denver. (Denver Mot. for Summ. J at 1.) Plaintiff in his Complaint makes no allegations of a constitutional violation against Defendants Craig and Riedmuller connected to the Denver arrest itself. He does not state that these officers acted improperly during the arrest. Therefore, Plaintiff has failed to state a constitutional violation claim against Defendants Craig and Riedmuller concerning the seizure of his property and Defendants Craig and Riedmuller are therefore entitled to qualified immunity in their individual capacities on this claim.

### 5. Fifth and Fourteenth Amendment Due Process Claims: Defendants Craig, Riedmuller, Malpass, and Mandler for Retention of Money Seized Incident to Plaintiff's Arrests

### 1. Denver

Plaintiff makes no allegations that Defendants Craig, Riedmuller, or Malpass[3] had any personal control of the money taken from either Denver or the Littleton arrests after the monies were lodged with the two separate property bureaus.[4]  The money originally seized by Defendants Craig and Riedmuller during the Denver arrest was placed into evidence at the

---

[3] There is no allegation that Defendant Malpass had any personal involvement with funds seized during the Denver arrest whatsoever.

[4] As previously noted, the money seized originally by Littleton Defendant Mandler was always in the custody and control of the Littleton Police Department property bureau after the arrest. (Adams Affidavit ¶ 4.)

Denver Police Department, and a Property Invoice and Receipt was prepared in the name of "Paul Brooks,"-- the *alias* provided by Plaintiff upon his arrest. (Denver Mot. for Summ. J at 1.) The Complaint does not allege that Defendants Craig or Riedmuller had any control over the Denver property bureau. Defendants Craig and Riedmuller make identical statements in their Affidavits about placing the money taken in connection with the arrest into evidence at the Denver Police Department,

> After placing the money in the amount of $1,068.23 with the Denver Police Department Property Bureau, I had no further responsibilities or involvement with the retention of this property at the Property Bureau, or the disposition or return of this property by the Property Bureau.
>
> I do not recall ever being contacted by phone or in writing by John Nasious requesting a return of this sum of money.

(Craig Affidavit ¶ 4; Riedmuller Affidavit ¶ 4.) There is no constitutional violation committed by placing seized money in the Denver Police Department Property Bureau. Therefore, Defendants Craig, Riedmuller, and Malpass are entitled to qualified immunity on claims against them in their individual capacities for retention of the money seized on June 6, 2005.

## 2. Littleton

Similarly, there is no allegation in the Complaint that Defendant Mandler was responsible for maintaining the money that was seized during the Littleton arrest. In his Affidavit, Defendant Mandler states, "I do not recall ever being contacted, prior to the lawsuit, by phone or in writing, by Mr. Nasious requesting a return of his property." (Mandler Affidavit ¶ 12.) There is no constitutional violation committed by placing seized money in the Littleton Police Department property bureau. Therefore, Defendant Mandler is entitled to qualified

immunity on claims against him in his individual capacity for retention of the money seized on June 16, 2006.

This court concludes that Plaintiff has not made a showing that any constitutional right was violated by any of the individual officers named in this case. Therefore they each are entitled to qualified immunity and this court recommends that all claims against them in their individual capacities be dismissed.

## II.  Official Capacity Claims Against Police Officers

### A.  Liability flows to the City, or City and County

Colo. Rev. Stat. § 31-15-101(1)(a) and (b) (2008) provide that only municipalities, and not their various subsidiary departments, "shall be bodies politic and corporate" and "may sue or be sued." Similarly, C.R.S. § 30-11-101(1)(a) (2008) provides that only a county, and not its various subsidiary departments, shall be a body politic and as such shall be empowered to sue and be sued. *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991). However, the acts of municipal and county employees, preformed under color of state law, and pursuant to a policy or custom of the employing municipal corporation or county, can subject these public entities to liability. *Boren v.  City of Colorado Springs*, 624 F.Supp. 474 , 479 (1985).

### B.  Official Capacity Claims

Claims against the police officers in their official capacities must be treated as claims against the municipal entities. *Johnson v. Board of County Commr's for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996). Therefore, the official capacity claims against Defendants Malpass, Craig, and Riedmuller for the various alleged constitutional violations as well as for

wrongful retention of money seized from the Plaintiff on June 6, 2005 must be treated as claims against the City and County of Denver ("Denver").  Likewise, the official capacity claims against Defendant Mandler for the same alleged wrongdoing on June 16, 2006 must be treated as claims against the City of Littleton ("Littleton").

### C. Official Capacity Claims for Unlawful Seizures and Failure to Provide Miranda Warnings

The official capacity claims brought against the individual police officers which have been discussed in Section II, *infra*, with respect to individual liability, fare no better against the municipal entities.  For all the reasons set forth *infra*, foremost of which is that no constitutional violations were committed by any of the actions of the defendant police officers, the official capacity claims on the same issues and bases also fail.

Therefore, this court recommends that the official capacity claims against Defendant Mandler for failure to provide *Miranda* warnings and unlawful seizure of $2,435.00 be dismissed.  Also, this court recommends that the official capacity claims against Defendants Craig, Riedmuller and Malpass for unlawful seizure of $1,068.23 be dismissed.

### D. Municipal Liability Based on Unconstitutional Police Policy or Practice in Retention of Seized Property

The rambling allegations in the Complaint appear to allege two theories of municipal liability against the Denver police officers only, for: (1) an unconstitutional policy or practice regarding disposition of property held by the police department; and (2) unconstitutional hiring, training, supervision and discipline of employee police officers, regarding disposition of property.  (Compl. at 4-6.)  There does not appear to be similar allegations against Defendant

18

Mandler.  Since there are no cognizable claims against the municipal employer of Defendant Mandler, this court recommends that all official claims against Mandler be dismissed.

"A municipality may not be held liable under §1983 soley because it employs a tortfeasor."  *Board of County Comm'rs v.  Brown*, 520 U.S. 397, 403 (1997).  "[T]o establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir.) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

In this case, Plaintiff asserts, "There is a ongoing problem in the Denver Police Department Property Division.  This is not an isolated incident, and this will not simply go away."  (Compl. at 4.)  He also argues, "The knowledge of potential problems and failure to correct them seem to be an ongoing problem in the City and County of Denver."  (*Id.*  at 6.)  Plaintiff does not cite to a particular police policy that he claims to be unconstitutional.  Nor does Plaintiff establish any link between the named defendants and any unlawful custom or policy, especially given the roles played by Defendants Craig, Riedmuller, and Malpass in connection with the Plaitntiff.

In fact, the Plaintiff himself caused most of the problems associated with the timely handling of his seized money in the Denver and Littleton seizures.  Plaintiff gave the officers false names when he was arrested.  In the Denver arrest, Plaintiff gave the *alias* of "Paul Brooks" to the police officers (Denver Mot. for Summ. J at 1.), and in Littleton, Plaintiff initially identified himself as "Dennis Wellsworth."  (Mandler Affidavit at ¶ 5.)  In the Denver case, the seized money was booked in the property bureau under the false name.  In each case, only upon

further investigation were the police able to later determine Plaintiff's actual identity.  (Craig Affidavit ¶ 6; Riedmuller Affidavit ¶ 6; Mandler Affidavit at ¶ 6.)

A review of the record reveals no evidence that Defendants Craig and Riedmuller have policy making authority or serve capacities where rules and regulation concerning the holding of property in the Denver Police Department property bureau are drafted and enforced. Defendants Craig and Riedmuller make the identical statements in their Affidavits about <u>not having policy-making authority</u>,

> I do not have any duties with regard to hiring, training, supervising, or disciplining Denver Police Officers, either in general, or specifically for the Property Bureau.  I do not have any policy-making authority at the Denver Police Department.

(Craig Affidavit ¶ 6; Riedmuller Affidavit ¶ 6.)  There has been no Affidavit filed by Defendant Malpass, but defendants' motion indicates that he does not have policy-making authority, and the Complaint does not indicate to the contrary.  (Denver Mot. for Summ.  J at 9, 5.)

Throughout his Complaint, however, Plaintiff asserts that he made numerous unsuccessful attempts to contact the defendants to retrieve his money from Denver.  (Compl. at 4-6.)  Plaintiff asserts, "Nasious contacted the Denver Police Dept. Property Division he was told there was no record of any property."[5]  (Compl. at 5.)  Plaintiff also states, "Nasious submitted a motion to Denver District Court Judge Englehoff to retrieve his property, and the Judge denied the motion."  (*Id.*)  It is unclear whether Plaintiff was provided a motion hearing.  *People v.*

---

[5] This statement apparently was in regard to the Littleton seizure.  It now appears to be undisputed that Littleton retained the money seized from the Plaintiff on June 16, 2006 and then, on or about September 8, 2008, returned the money to Defendant's father.  (Littleton Defs. Mot. for F.R.C.P. 41 Dismissal [Doc.  No.  92, filed on December 10, 2008].)

*Rautenkranz*, 641 P.2d 317, 318 (Colo. App. 1982) (when the need for property seized in a case has ended, the trial court has the jurisdiction and the obligation to order its return, and if necessary, to conduct a hearing to determine its appropriate disposition and any ancillary issues). Evidence of seizure from the defendant is *prima facie* evidence of his or her ownership of the property. *People v. Buggs*, 631 P.2d 1200, 1201 (Colo. App. 1981); *see also People v. Strock*, 931 P.2d 538, 539 (Colo. App. 1996) (defendant establishes a *prima facie* case by showing that the property was seized from him, and burden then shifts to the prosecution to prove by a preponderance of the evidence that the items seized were the fruit of an illegal activity or that a connection exists between those items and criminal activity).

There has been no information provided by the Denver defendants regarding the current location of Plaintiff's seized money from the June 6, 2005 arrest. This court concludes that it is likely located in the Denver Police Department property bureau because Defendants Craig and Reidmuler state in their Affidavits that it was placed there after it was seized from the Plaintiff. (Craig Affidavit ¶ 6; Riedmuller Affidavit ¶ 6.) There is no information in the record concerning the policy and procedures required by the Denver Police Department for the return of this money including the steps Plaintiff must take to establish ownership and demand return. Moreover, the defendant's motion does not assert any grounds for holding Plaintiff's money after the criminal proceedings have concluded and the need for evidence eradicated. Without this additional information, the court cannot determine if the defendant's actions in holding Plaintiff's money complies with constitutional due process requirements and municipal liability in connection therewith.

Therefore, this court finds that Plaintiff's Complaint has provided sufficient facts to satisfy the "plausibility" standard set forth by the Supreme Court and has included "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). There remains a disputed issue as to material facts necessary to resolving Plaintiff's claim that Denver has violated his Fifth and Fourteenth Amendment rights to due process by retaining his property originally seized on June 6, 2005, which is currently pleaded as official capacity claims against defendants Malpass, Craig, and Riedmuller.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Littleton and Hal Mandler's Motion for Summary" (Doc. No. 72) be GRANTED; that "Motion for Summary Judgment by Defendants Denver Police Department, Officer Bart Malpass, Officer Jennifer Craig and Officer Erik Riedmuller" (Doc. No. 84) be GRANTED in part and DENIED in part, as follows:

1. All claims against Defendant Littleton Police Department be dismissed;

2. All claims against Defendant Denver Police Department be dismissed;

3. All claims against Defendant Mandler in both his individual and official capacity be dismissed;

4. All claims against Defendants Malpass, Craig, and Riedmuller in their individual capacities be dismissed;

5. Claims against Defendants Malpass, Craig, and Riedmuller in their official capacities for violation of Plaintiff's Fourth Amendment rights be dismissed; and that the City and County of Denver be substituted as the proper defendant in place

of Defendants Malpass, Craig and Riedmuller in their official capacities with respect to claims for violation of Plaintiff's Fifth and Fourteenth Amendment rights to due process, concerning the retention of $1,068.23 seized from Plaintiff on June 6, 2005. This court further recommends that the caption of the case be amended to so reflect.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d

at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

   Dated this 19th day of February, 2009

            **BY THE COURT**:

            _____

            Kathleen M. Tafoya
            United States Magistrate Judge